UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW HAWRYCH, M.D.,

     Plaintiff,

v.                           Case No.:  2:21-cv-830-SPC-MRM

NUTRA-LUXE M.D., LLC,
NUTRALUXE GLOBAL, LLC,
PETER VON BERG, and LASH
HOLDCO, LLC,

     Defendants.

_____/

## OPINION AND ORDER[1]

Before the Court are Nutra-Luxe, M.D., LLC and Peter Von Berg's Motion to Dismiss (Doc. 55), Nutraluxe Global, LLC and Lash Holdco, LLC's Motion to Dismiss (Doc. 56), along with Plaintiff Dr. Andrew Hawrych's Responses in Opposition (Doc. 57, Doc. 58).  For the following reasons, the Court grants the Motions and declines to exercise supplemental jurisdiction over the state law claims that remain.

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them.  The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

## BACKGROUND[2]

Nearly twenty years ago, Plaintiff Dr. Andrew Hawrych, a plastic surgeon, and Defendant Peter Von Berg, a businessman operating a cosmetics and skin care company, formed an oral agreement to develop new cosmetic products. (Doc. 54 at ¶¶ 10, 11). Early in their relationship, Dr. Hawrych was paid monthly for his research, development, and promotional work. (Doc. 54 at ¶ 13). But when Von Berg's businesses experienced financial troubles, the parties changed their arrangement. (Doc. 54 at ¶ 14–17). In exchange for Dr. Hawrych's continued commitment, and instead of monthly compensation, Von Berg offered Dr. Hawrych a 10% ownership interest in Nutra-Luxe M.D., LLC. (Doc. 54 at ¶ 17). Dr. Hawrych agreed, and he worked for Nutra-Luxe and Von Berg under this arrangement for sixteen years. (Doc. 54 at ¶18).

Because of Dr. Hawrych's association, Von Berg incorporated the acronym "M.D." into the company name, added the phrase "physician developed/formulated" to the product descriptions, and used Dr. Hawrych's name, likeness, and trademark ("Hawrych MD") in various advertisements. (Doc. 54 at ¶¶ 19–23; Doc. 54-1).

---

[2] The Court recounts the factual background as pled in the Amended Complaint, which it must take as true to decide whether the Amended Complaint states a plausible claim. *See Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1198–99 (11th Cir. 2012) (per curiam).

Although Von Berg "continuously confirmed" that Dr. Hawrych would receive the value of his ownership interest when the company was sold, Von Berg sold Nutra-Luxe to Lash HoldCo, LLC without notice or compensation to Dr. Hawrych.  (Doc. 54 at ¶¶ 25–26).  Nutraluxe Global was formed after the sale and is the successor to Nutra-Luxe's assets.  (Doc. 54 at ¶ 27).

After he was denied his promised 10% of the sale proceeds, Dr. Hawrych revoked permissions and licenses that he had granted Defendants for the use of his name, image, and trademark.  (Doc. 54 at ¶¶ 28–30).  After September 2021, Dr. Hawrych had severed himself from the research, development, and sale of Defendants' products.  Dr. Hawrych then sued Von Berg, Nutra-Luxe, Lash, and Global.[3]

## **LEGAL STANDARD**

Together, Federal Rules of Civil Procedure 8 and 10 establish the minimum pleading requirements.  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  And each "party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).

---

[3] The Court will refer to Lash and Global collectively as "Lash-Global."

A defendant can attack a complaint for not stating a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A party must plead more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In considering a motion to dismiss, a court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). But acceptance of a complaint's allegations is limited to well-pled allegations. *See La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

## **DISCUSSION**

Defendants challenge four counts of Dr. Hawrych's seven-count Amended Complaint: Count I, which alleges false advertising under the Lanham Act, 15 U.S.C. § 1125; Count II, which alleges failure to pay minimum wage under the Fair Labor Standards Act, 29 U.S.C. § 206; Count IV, which alleges negligence; and Count VII, which alleges unjust enrichment.

## **Count I – False Advertising**

To state a Lanham Act claim for false advertising, a plaintiff must allege (1) the defendant's statements were false or misleading; (2) the statements deceived, or could deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) the plaintiff has been, or likely will be, injured because of the false or misleading statement. *See Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). Lash-Global's challenge to Count I, and the Court's analysis, will focus on the first element: whether Dr. Hawrych sufficiently alleged that Lash-Global's statements were false or misleading.

Lash-Global argues Count I fails because the Amended Complaint alleges no false or misleading statement. Lash-Global points out that Dr. Hawrych explicitly alleges that he developed the products at issue (Doc. 54 at ¶¶ 20, 55, 76, 99), therefore, Lash-Global's advertisements stating that Dr. Hawrych developed their products are truthful. Lash-Global contends that because a true statement cannot support a false advertising claim, Count I should be dismissed.

Dr. Hawrych responds that he is no longer involved in the research, development, and marketing of Lash-Global's products, and while the

representations in the marketing materials are true, they are "misleading as to his present involvement."  (Doc. 58 at ¶¶ 12, 13).

The Amended Complaint includes these allegations about Lash-Global's statements:

- Dr. Hawrych's involvement gave Von Berg and Nutra-Luxe the ability to use the acronym "M.D." in the company's name, which "demonstrated that there was some involvement from a medical professional which could . . . assure consumers of the products [sic] reliability" (Doc. 54 at ¶ 19);

- Nutra-Luxe's product descriptions included the phrase "physician developed/formulated" because of Dr. Hawrych's involvement (Doc. 54 at ¶ 20);

- Dr. Hawrych gave Von Berg and Nutra-Luxe the right to use his name, likeness, and registered trademark "Hawrych MD," and Nutra-Luxe included those items in various advertisements (Doc. 54 at ¶¶ 22, 23);

- In September 2021, after the sale of Nutra-Luxe, Dr. Hawrych revoked permission for the use of his name, image, and trademark; and he severed himself from the research, development, and sale of Nutra-Luxe products (Doc. 54 at ¶¶30, 42);

6

- After Dr. Hawrych had revoked permissions and licenses that he had granted Defendants for the use of his name, image, and trademark, Lash-Global has said its "products were developed by Hawrych and [has] included Hawrych's name on their products as listed on their websites," and it has marketed its products using terms identical or similar to "Dr. Hawrych" and "Dr. A. Hawrych" (Doc. 54 at ¶¶ 43, 44);

- Lash-Global's use of Dr. Hawrych's image, likeness, and trademark give the misleading impressions that Dr. Hawrych is involved in manufacturing Lash-Global's products, that he is associated or connected with Lash-Global, and that Lash-Global continues to have his sponsorship, endorsement, consent, or approval (Doc. 54 at ¶ 41).

And attached to the Amended Complaint[4] are screenshots of NutraLuxe's product descriptions, stating, "[t]his revolutionary technology was clinically researched, physician formulated and tested by A. Hawrych MD, A Board Certified Facial Plastic Surgeon" (Doc. 54-2 at 3), and, "Dr. Hawrych's most advanced skin serum is formulated with two neuro-peptide ingredients" (Doc. 54-2 at 6).

---

[4] "A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

The statements that support Dr. Hawrych's false advertisement claim tout his involvement in the research, formulation, and testing of Nutra-Luxe's products. And Dr. Hawrych admits to this involvement. (Doc. 54 at ¶¶ 20, 55, 76, 99). So the statements accurately reflect Dr. Hawrych's relationship to the products. *See Webster v. Dean Guitars*, 955 F.3d 1270, 1277 (11th Cir. 2020) (the statements central to the plaintiff's false advertising claim were accurate and not actionable where the plaintiff was involved in creating an original guitar, and the company selling reissues of that guitar used videos depicting that involvement in its advertisements for the reissues). Statements conveying Dr. Hawrych's role in the research, formulation, and testing of Nutra-Luxe's *products* are not rendered misleading because his relationship with the *company* producing the products has changed.

The statements that support Dr. Hawrych's false advertising claim are accurate. This is not disputed. Count I is dismissed.

### Count II – FLSA Failure to Pay Minimum Wage

To state a claim for failure to pay minimum wage under the FLSA, Dr. Hawrych must allege (1) he was employed by Von Berg or Nutra-Luxe; (2) Von Berg or Nutra-Luxe engaged in interstate commerce; and (3) Von Berg or Nutra-Luxe failed to pay Dr. Hawrych minimum wage. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n.68 (11th Cir. 2008); *Sec'y of Lab. v. Labbe*, 319 F. App'x 761, 763 (11th Cir. 2008) (per curiam). Here, the

sufficiency of Count II depends on whether the Amended Complaint adequately alleges an employment relationship with either Von Berg or Nutra-Luxe.

The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). A person is "employed" when an employer "suffer[s] or permit[s] [the employee] to work." Id. § 203(g). And an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." Id. § 203(d). Courts use the "economic reality" test[5] to examine the circumstances surrounding a relationship to determine whether an individual is an employee. Villarreal v. Woodham, 113 F.3d 202, 205 (11th Cir. 1997).

Von Berg and Nutra-Luxe raise two challenges to Dr. Hawrych's wage and hour claim. First, they argue Dr. Hawrych is an exempt professional who has no FLSA claim. Second, they contend Dr. Hawrych fails plausibly to plead that either Von Berg or Nutra-Luxe were his employer. Given these deficiencies, they argue Count II should be dismissed with prejudice.

In response, Dr. Hawrych maintains he is not an exempt professional because he was not engaged in the practice of medicine or compensated as a

---

[5] Factors to be considered include: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Villarreal, 113 F.3d at 205 (citation omitted).

"professional" while he worked for Von Berg and Nutra-Luxe.  Dr. Hawrych also insists that both Von Berg and Nutra-Luxe were his employers under the FLSA.

The Court agrees that Dr. Hawrych has not stated a claim for failure to pay minimum wages under the FLSA, but not for the reasons argued by Von Berg and Nutra-Luxe.

Dr. Hawrych worked over thirty hours each week researching, testing, developing, designing, and promoting cosmetic products for Nutra-Luxe. (Doc. 54 at ¶ 58).  He attended weekly business meetings and board meetings, represented the company at trade shows, and operated the company's Amazon account.  (Doc. 54 ¶¶ 59–60).  He also granted Von Berg and Nutra-Luxe permission to incorporate "M.D." into the company name, to add the phrase "physician developed/formulated" to the product descriptions, and to use Dr. Hawrych's name, likeness, and trademark ("Hawrych MD") in various advertisements.  (Doc. 54 at ¶¶ 19–23; Doc. 54-1).  And Dr. Hawrych did this for sixteen years with no compensation.  (Doc. 54 at ¶¶ 16, 17, 18, 29, 31). These are not the actions of an employee.  These are the actions of a stakeholder.

Early in their relationship, Von Berg compensated Dr. Hawrych monthly for his services.  (Doc. 54 at ¶ 13).  But when Von Berg reported financial difficulties, Dr. Hawrych agreed to continue providing the same services for no

pay. (Doc. 54 at ¶¶ 15–18).  Instead, he was promised a 10% ownership interest in Nutra-Luxe.  (Doc. 54 at ¶ 17).

At that point, the relationship changed from one of arguable "employment" to a joint venture, in which Dr. Hawrych contributed sweat equity to the company with the expectation of a payout once the company was sold.  Looking at the economic realities of this relationship, there was no employee/employer relationship.  *See Escobar v. GCI Media, Inc.*, No. 08-21956-CIV, 2009 WL 1758712, at *6 (S.D. Fla. June 22, 2009) (because plaintiff was a partner, not an employee, he was not protected by the FLSA); *Godoy v. Rest. Opportunity Ctr. of New York, Inc.*, 615 F. Supp. 2d 186, 195 (S.D.N.Y. 2009) (because plaintiffs and defendants were putative co-owners of a restaurant they were working collectively to create, plaintiffs were not employees and had no claims under the FLSA); *Alperstein v. Irvin B. Foster & Sons Sportswear Co.*, 193 F. Supp. 161, 162–63 (E.D. Pa. 1961) (plaintiff's willingness to work without compensation precluded conclusion he was an employee).

The parties focus on whether Dr. Hawrych was an "exempt" employee under the FLSA.  But Count II fails because, given the economic realities of his relationship with Von Berg and Nutra-Luxe, Dr. Hawrych was not an employee.  Count II is dismissed.

## <u>Count IV – Negligence</u>

The four elements of a negligence claim are duty, breach of that duty, proximate cause, and actual loss or damage. *Jackson Hewitt, Inc. v. Kaman*, 100 So. 3d 19, 27–28 (Fla. Dist. Ct. App. 2011). Breach, causation, and damages are questions of fact, but "the determination of whether a duty is owed presents a question of law." *Id.* at 28 (citation omitted). And if it is determined that no duty exists, a negligence claim fails. *Id.* at 28 (citation omitted).

"It is a fundamental, long-standing common law principle that a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract." *Alvarez Rodriguez v. Branch Banking & Tr. Co.*, No. 1:19-cv-25191, 2020 WL 5640399, at *3 (S.D. Fla. July 9, 2020) (quoting *Island Travel & Tours, Ltd., Co. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1240 (Fla. Dist. Ct. App. 2020) (per curiam)). A "tort is independent if the plaintiff must prove facts separate and distinct from the breach of contract." *Id.* at *3 (citation and quotation marks omitted). And damages resulting from an independent tort "must be independent, separate and distinct from the damages sustained from the contract's breach." *Id.* at *3 (quoting *Peebles v. Puig*, 223 So. 3d 1065, 1068 (Fla. Dist. Ct. App. 2017)).

The allegations supporting Dr. Hawrych's negligence claim are (1) Von Berg sold Nutra-Luxe to Lash without notice to Dr. Hawrych (Doc. 54 at ¶ 26);

(2) Dr. Hawrych did not receive his 10% interest in the sales proceeds (Doc. 54 at ¶ 28); (3) Von Berg and Nutra-Luxe failed to exercise their duty of care in disclosing Dr. Hawrych's 10% ownership of Nutra-Luxe (Doc. 54 at ¶¶ 92, 95); (4) Lash-Global failed to exercise its duty of care in investigating and discovering Dr. Hawrych's 10% ownership of Nutra-Luxe (Doc. 54 at ¶¶ 92, 94); and (5) these failures damaged Dr. Hawrych by depriving him of his 10% of the value of Nutra-Luxe (Doc. 54 at ¶¶ 96, 97).

## **Negligence as to Von Berg and Nutra-Luxe**

Von Berg and Nutra-Luxe attack Count IV on two grounds. First, they argue that the Amended Complaint fails to show they owed Dr. Hawrych a duty of care. And second, that the Amended Complaint fails to state a tort claim independent of the breach of contract claim.

Dr. Hawrych counters that Von Berg and Nutra-Luxe had a general duty of reasonable care in performing their contractual obligation, and he claims that the independent tort rule is inapplicable because of the limitations the Florida Supreme Court placed on it in *Tiara Condo. Association, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399 (Fla. 2013).

The second argument Von Berg and Nutra-Luxe raise is dispositive. In *Tiara*, the Florida Supreme Court explained, "the economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." 110 So.

3d at 401.  The Court limited the doctrine's application to cases involving products liability.  *Id.* at 407.  But in her concurring opinion, Justice Pariente clarified that the Court's holding did not depart from common law principles that restrict tort remedies for parties to a contract.  *Id.* at 408 (Pariente, J., concurring).  "For example, in order to bring a valid tort claim, a party still must demonstrate that all of the required elements for the cause of action are satisfied, including that the tort is independent of any breach of contract claim."  *Id.* (Pariente, J., concurring).

Here, the same underlying conduct gives rise to Dr. Hawrych's breach of contract claim and his negligence claim, as it relates to Von Berg and Nutra-Luxe.  For the breach of contract claim, the Amended Complaint alleges Mr. Von Berg and Nutra-Luxe breached their contract with Hawrych by selling Nutra-Luxe and then failed to pay Hawrych his 10% of the proceeds.  (Doc. 54 at ¶ 81).  For the negligence claim, the Amended Complaint alleges Von Berg and Nutra-Luxe failed to exercise its purported duty of care in disclosing Dr. Hawrych's 10% ownership of Nutra-Luxe and, by extension, deprived him of his 10% of the proceeds.  (Doc. 54 at ¶¶ 92, 95–97).  The negligence claim alleges no facts separate and distinct from the breach of contract claim.  And there is no allegation of damages flowing from negligence that are independent, separate, and distinct from the damages resulting from the contract's breach.

There are no facts or damages alleged in Dr. Hawrych's negligence claim that are independent, separate, and distinct from his breach of contract claim. Thus, the negligence claim is dismissed.  *See Alvarez Rodriguez*, 2020 WL 5640399, at *4 (quoting *Peebles*, 223 So. 3d at 1068); *ESJ JI Operations, LLC v. Domeck*, 309 So. 3d 248, 250 (Fla. 3d DCA 2020) (collecting cases).

## Negligence as to Lash-Global

Lash-Global also argues the Amended Complaint fails to establish it owed Dr. Hawrych a legal duty.  It urges the Court to conclude there was no special relationship between Lash-Global and Dr. Hawrych and that it would be improper to hold Lash-Global accountable for failing to perform by alleged bad actors Von Berg and Nutra-Luxe.  (Doc. 56 at ¶¶ 12–13).

Dr. Hawrych responds that he was owed a duty of care because he was within a foreseeable zone of risk created by Lash-Global's actions in purchasing Nutra-Luxe's business and assets.  He contends that "[h]ad [Lash-Global] properly investigated [Nutra-Luxe's] corporate structure to discover Hawrych's ownership, [it] would have had to purchase [Nutra-Luxe] from Hawrych as well."  (Doc. 58 at ¶ 68).

Determining the existence of a legal duty is not straightforward when a negligence claim is based on only economic loss; the question turns on whether the relationship between the parties "warrants creating a duty to protect economic interests outside contract and statutory law."  *Tank Tech, Inc. v.*

15

*Valley Tank Testing, L.L.C.*, 244 So. 3d 383, 393 (Fla. 2d DCA 2018) (quoting *Monroe v. Sarasota Cnty. Sch. Bd.*, 746 So. 2d 530, 534 n.6 (Fla. 2d DCA 1999)). "Thus, in order to proceed on a common law negligence claim based solely on economic loss, there must be some sort of link between the parties or some other extraordinary circumstance that justifies recognition of such a claim." *Id.* at 393 (collecting cases).

In *Curd v. Mosaic Fertilizer, LLC*, the Florida Supreme Court held, based on the extraordinary circumstances in the case, that a duty existed between two parties that did not have contractual privity. 39 So. 3d 1216, 1228 (Fla. 2010). There, the Court reasoned a fertilizer company owed a commercial fisherman a special duty because of the nature of the company's business (storage of pollutants and hazardous chemicals near Tampa Bay) and the fisherman's peculiar interest in the health of the public waters. *Id.*

Dr. Hawrych has alleged a peculiar interest in the Nutra-Luxe brand and products, but that is only part of the equation. Unlike in *Curd*, there is nothing extraordinary about the nature of Lash-Global's business or its dealings with Von Berg and Nutra-Luxe. It simply executed a transaction in pursuit of a business opportunity. This is an everyday occurrence.

Furthermore, "Eleventh Circuit precedents confirm that, in the commercial context, defendants are unlikely to owe a duty of care to strangers." *Kelly v. Davis*, No. 3:10CV392-MW/EMT, 2014 WL 12515345, at *4 (N.D. Fla.

July 17, 2014); *see also* Virgilio v. Ryland Group, Inc., 680 F.3d 1329, 1340–41 (11th Cir. 2012); Kafka v. Wachovia Bank, N.A., 218 F. App'x 960, 962 (11th Cir. 2007) (per curiam).

While Dr. Hawrych was not a stranger—his name was showcased from the company name to the product descriptions—he did not have a relationship, let alone a special relationship, with Lash-Global that would impose a duty toward him.   From Lash-Global's vantage, Dr. Hawrych was somehow associated with Von Berg and Nutra-Luxe, the opposing party in an arm's-length transaction.

In *Virgilio*, the Eleventh Circuit considered and rejected imposing an "affirmative duty on a developer, or on an entity that promotes a residential development, to publicly disclose material facts that may negatively affect the economic value of a home that the developer did not build, own or sell."  680 F.3d at 1334, 1339–41.  But Dr. Hawrych goes further.  He asks the Court to impose on contracting parties the affirmative duty to investigate the truth of representations made during an arm's-length transaction to safeguard the interests of those associated with their counterparts.  Dr. Hawrych asks too much.

When the plaintiff seeks only the recovery of an economic loss, the duty element of negligence law serves as an important barrier to over-extension of

17

liability. *Id.* at 1339–40 (citation omitted).  To conclude that a duty exists here would be just such an over-extension of liability.  Count IV is dismissed.

### Count VII – Unjust Enrichment

"A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Id.* at 1337 (citations omitted).  "[A]s to the first element, the benefit conferred on the defendant must be a direct benefit." *Johnson v. Catamaran Health Sols., LLC*, 687 F. App'x 825, 830 (11th Cir. 2017) (per curiam) (citing *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017)).  And "w[h]en a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails." *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331–32 (Fla. Dist. Ct. App. 2007) (collecting cases).

Lash-Global challenges Dr. Hawrych's unjust enrichment claim on two grounds: first, Lash-Global was not unjustly enriched because it paid for any benefit it received; and second, Dr. Hawrych did not directly confer a benefit on Lash-Global.

Dr. Hawrych tries to distinguish the authorities supporting the first argument, asserting that Lash-Global's failure to investigate and verify Von Berg's representations before it bought Nutra-Luxe render Lash-Global's

18

retention of the benefit unjust.  In response to the second argument, Dr. Hawrych contends he conferred a direct benefit on Lash-Global, despite the lack of direct contact.

The circumstances behind this case are this: Von Berg sold Nutra-Luxe and its products to Lash; Global now possesses Nutra-Luxe's former assets; Von Berg did not pay Dr. Hawrych his 10% interest from that sale.  (Doc. 54 at ¶¶ 26, 27, 28).  Lash-Global did not receive a windfall; it received the benefit of its bargain.  Under these circumstances it cannot be said that Lash-Global has been unjustly enriched.  And so, Count VII fails.

Count VII also fails because Dr. Hawrych did not directly confer a benefit on Lash-Global.  Two allegations in the Amended Complaint make this explicit. First: "[Dr.] Hawrych provided labor, services, materials, his likeness, expertise, the use of his registered and unregistered trademarks, creations and time *to [Nutra-Luxe] and [Mr. Von Berg]* in the development of cosmetic products, and thereby *conferred a benefit on them*."  (Doc. 54 at ¶ 121) (emphasis added).  And second: "Global . . . has retained all of [Dr.] Hawrych's benefits *bestowed on [Nutra-Luxe]*."  (Doc. 54 at ¶ 122) (emphasis added).

Florida courts consistently hold that an unjust enrichment claim must be based on a benefit directly conferred on the defendant.  *See, e.g.*, *Kopel*, 229 So. 3d at 818; *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. Dist. Ct. App. 2009); *Peoples Nat'l Bank of Com. v. First Union*

*Nat'l Bank of Fla., N.A.*, 667 So. 2d 876, 879 (Fla. Dist. Ct. App. 1996) (per curiam).  Dr. Hawrych conferred a direct benefit on Von Berg and Nutra-Luxe, but he conferred no such benefit directly on Lash-Global.  The allegations of the Amended Complaint illustrate this.[6]  Count VII is dismissed.

## Supplemental Jurisdiction

The Court has dismissed all the federal claims in this case.  And though a federal district court is given supplemental jurisdiction over state law claims that "form part of the same case or controversy" as federal claims over which it has original jurisdiction, a court "may decline to exercise supplemental jurisdiction over [such] claim[s] . . . if . . . [it] has dismissed all claims over which it has original jurisdiction."  *See* 28 U.S.C. § 1367(a), (c)(3).

"[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (footnote omitted); *see also Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) (per curiam) (citation omitted).   And in these circumstances, the Eleventh Circuit "strongly encourages" district courts to decline supplemental jurisdiction.  *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999).

---

[6] Even if these allegations did not explicitly characterize the benefit as conferred directly to Mr. Von Berg and Nutra-Luxe, the amended complaint makes clear that any connection between Dr. Hawrych and Lash-Global was attenuated and that the circumstances surrounding the sale of Nutra-Luxe belie any claim of a direct benefit flowing from Dr. Hawrych to Lash-Global.

When deciding whether to exercise supplemental jurisdiction, district courts should consider "concerns of comity, judicial economy, convenience, fairness, and the like." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1123 (11th Cir. 2005). After review, the Court employs its discretion and declines to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3).

First, judicial economy weighs against exercising supplemental jurisdiction. Judicial economy is "served when issues of state law are resolved by state courts." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002).

Second, convenience points to retaining jurisdiction—but only just. The Eleventh Circuit has noted, "as far as the parties are concerned, it would be most convenient to try every claim in a single forum." *Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 539 (11th Cir. 2015).

Third, fairness considerations do not favor jurisdiction here. Each "litigant who brings supplemental claims in [federal] court knowingly risks the dismissal of those claims." *Id.* Because this case has not progressed past Defendants' motions to dismiss, it is still in the early stages of litigation. *See Raney*, 370 F.3d at 1089 (encouraging district courts to dismiss remaining state claims when the federal claim has been dismissed prior to trial).

Fourth, comity cuts against exercising supplemental jurisdiction. "It is a bedrock principle that 'needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.'" *Ameritox*, 803 F.3d at 539 (quoting *Gibbs*, 383 U.S. at 726) (alteration omitted).

Finally, there are no concerns about the timeliness of Dr. Hawrych's claims because Section 1367(d) tolls the statutes of limitation for state claims during the period in which they have been pending in federal court and for thirty (30) days after an order of dismissal. *See* 28 U.S.C. § 1367(d); *Jinks v. Richland Cnty.*, 538 U.S. 456, 465 (2003) (upholding 28 U.S.C. § 1367(d) as constitutional); *Beck v. Prupis*, 162 F.3d 1090, 1099–1100 (11th Cir. 1998) ("[A] dismissal under section 1367 automatically tolls the statute of limitations on the dismissed claims for 30 days").

On balance, these factors weigh against the Court's exercise of supplemental jurisdiction.

## CONCLUSION

Accordingly, it is now

**ORDERED:**

(1)     Defendants' Motions to Dismiss (Doc. 55, Doc. 56) are **GRANTED**. Counts I, II, IV, and VII are **DISMISSED with prejudice**.

(2)     The Court declines to exercise supplemental jurisdiction over the remaining state claims; therefore, this action is **DISMISSED without prejudice**.

(3)     The Clerk is **DIRECTED** to deny any pending motions, terminate all deadlines, enter judgment, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on April 21, 2022.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record